APELIO FELICES PORTILLA, Plaintiff and Appellee, *v.* PORTO RICO IRON WORKS, INC., Defendant and Appellant.

No. 6433. Argued November 16, 1934.—Decided November 30, 1934.

*F. Parra Capó* and *F. Parra Toro* for appellant. *José S. Alegría* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

This is an action of debt based upon a contract entered into by the plaintiff Apelio Felices Portilla and the defendant Porto Rico Iron Works, Inc., on November 29, 1929. It is alleged that this contract was made by virtue of the activities of the plaintiff for the incorporation of the industrial partnership Sobrinos de Portilla and for securing the control of said partnership by the said defendant Porto Rico Iron Works, Inc., activities which were made at the request of the defendant.

The contract to which we refer annulled and rendered ineffective a prior contract between the same parties, dated September 16, 1929, whereby the defendant and appellant bound itself to guarantee to the plaintiff an advanced monthly payment of $350 for his services to the new corporation to be organized out of the partnership Sobrinos de Portilla. The contract of September 16, 1929, reads in part as follows:

"At the same time we bind ourselves to guarantee him an advance of $350 payable monthly for his services to the new corporation Sobrinos de Portilla, Inc. during five years, subject to the general conditions about the retirement of the partners which now appear in the acquisition contract."

The contract dated November 29, 1929, in the pertinent part reads as follows:

"We annul the agreement existing by virtue of a letter of the Porto Rico Iron Work, Inc. dated September 16, 1929, and in lieu thereof we agree that the Porto Rico Iron Works, Inc. will guarantee an advance of $350 payable monthly, during the existence of his employment contract with the corporation to be organized under the name of Sobrinos de Portilla, Inc. to Mr. Apelio Felices Portilla, as a salary consideration and as a share in the profits of the corporation."

It is alleged by the plaintiff and admitted by the defendant that the partnership Sobrinos de Portilla having been incorporated under the name of Portilla Iron Works, Inc. and the control thereof handed over to the Porto Rico Iron Works, Inc. as a result of the efforts of the plaintiff, a

service contract dated January 27, 1930, was entered into by the plaintiff and the said corporation Portilla Iron Works, Inc., by mutual agreement with the defendant Porto Rico Iron Works, Inc. under the following terms:

"1. The party of the first part agrees to render services to the party of the second part as sales manager in the establishment of the party of the second part in San Juan, P. R., and to render any other service within the general scope of the business that might be required by the Board of Directors.

"2. This contract will remain in force for a period of five (5) years, beginning on the 18th of the current month of January, from which date the contract is made effective.

"3. The party of the first part will draw as compensation for his services two hundred seventy five dollars ($275.00) per month. Besides, as an additional compensation he will be entitled to a five per cent (5%) of the annual net profits of the corporation."

The evidence introduced shows that the defendant delivered to the plaintiff a monthly sum of $75.00 from March 1, to October 2, 1930, and that the plaintiff receipted for each of said amounts in documents drafted by the defendant, which read as follows:

"I have received from the Porto Rico Iron Works, Inc. the sum of seventy five dollars by way of advance on the 5 per cent of the annual net profits of the corporation Portilla Iron Works, Inc. which belongs to me in accordance with my employment contract with said corporation and I hereby agree to have that amount discounted and · delivered to the Porto Rico Iron Works, Inc. when the settlement of my account is made."

The defendant admits having failed to pay to the plaintiff the sums for the months of August 1930, to September 1931, that is, twelve months, which at the rate of $75 per month, amounts to $900, and alleges that the monthly payments made prior to said date were made as an advance on the 5 per cent of the annual net profits of the corporation Portilla Iron Works, Inc., said sum to be discounted to the plaintiff by the defendant on the date of the annual settlement of said profits.

The defendant alleges that it has paid to the plaintiff the sum of $675 from November 29, 1929 to July 30, 1930, and files a cross complaint against Felices to recover said sum.

The lower court sustained the complaint and dismissed the cross complaint, ordering the defendant to pay the sum claimed with legal interest from the date of the filing of the complaint, with costs and attorney's fees. The appellant alleges that the lower court erred in considering that the obligation contracted was a principal obligation and that the intention of the contracting parties in executing the contract was to guarantee to the plaintiff a monthly sum of $350 while his service contract was in force, which was equivalent to the defendant and appellant guaranteeing a minimum profit of $75 per month.

We see that on September 16, 1929, the defendant bound itself to guarantee to the plaintiff a monthly advance of $350 for his services to the new corporation Sobrinos de Portilla, and that later on, on November 29, 1929, this contract was annulled, and the defendant then bound itself to guarantee to the plaintiff a monthly advance of $350 as salary and as share in the profits of the corporation. It seems that the plaintiff was originally guaranteed an advance of $350 as salary and that later on the parties took into account the salary of the plaintiff and his share in the profits in order to establish the guaranty. That such was the intention of the contracting parties is clearly shown by the agreement executed on January 27, 1930, explanatory of the former contract. In this last agreement the plaintiff is assigned $275 per month as a compensation for his services and it is said that as an additional compensation he will be entitled to a 5% of the annual net profits of the corporation.

And to avoid any doubts as to the agreement entered into by the parties, the plaintiff himself admits in a document signed by him that the sum of $75 is an advance on his

5% share in the said profits, to be discounted and delivered to the Porto Rico Iron Works, Inc. on the date of the settlement.

It is alleged in the complaint and admitted in the answer that no profits were liquidated in the balances of Portilla Iron Works, Inc. However, the treasurer of the defendant, Luis Ferré, testifies that the first year the Portilla firm had a profit of $4,000 more or less, and the second year a loss of $7,000. The plaintiff states that the monthly payment of $75 was not to be charged directly to profits but to salary and profits. Regarding the signed receipts we copy the following from the testimony of the plaintiff in answer to questions of the defendant:

"A. Please examine these seven (7) documents which I show you.

"W. Eight (8) payments that they made to me.

"  .      .     .      .     .      .      .      .

"A. So that according to this receipt and to the others which are alike, you received from the Porto Rico Iron Works, Inc. the sum of seventy five (75) dollars as an advance on your 5% share on the annual net profit of the corporation Portilla Iron Works, Inc. belonging to you in accordance with your employment contract with said corporation and which sum of seventy five (75) dollars you agreed 'to have discounted and delivered to the Porto Rico Iron Works, Inc. when the settlement of my account is made'?

"W. I acknowledge receipt of those seventy five (75) dollars per month on account of salary and of the 5% of the profits which they guaranteed I was going to have in the corporation Portilla Iron Works, Inc.

"A. Does this receipt show the terms of the contract between yourselves?

"W. No. Salaries and profits, as the original contract recites and as the original letter over there also recites.

"A. So you signed this receipt which was not true? A receipt which did not show the exact transaction made by you?

"W. As I received seventy five (75) dollars, I signed. There was always the belief that one was dealing with . . . .

"A. (Interrupting). So that you would have signed any kind of a receipt, though untrue, as long as you got the seventy five (75) dollars?

"W. That was a part of the contract. Profits were mentioned in it.

"A. Well, will you please make up your mind? Does this receipt show the real transaction you had with these gentlemen?

"W. It is only partly true.

"A. And why not entirely true?

"W. Because each time I called their attention thereto they said to me: Well, there will be no differences between us . . . . "

Witness Luis Ferré, treasurer of defendant, testified that on September 16, Mr. Apelio Felices and Mr. Ramón Riancho went to the offices of the Porto Rico Iron Works, Inc. to see if this corporation was interested in taking charge of the business of Portilla in San Juan. "They proposed," says the witness, "that if we guaranteed a monthly salary of $350 to one and $400 to the other, and at the same time gave them a commission of $6,000 to one and $4,000 to the other, they would work for us and they would let us manage and run the business in San Juan. To that purpose, on October 1, they gave us an option so as to enable the Porto Rico Iron Works, Inc. to conduct during two months an investigation in the books of Sobrinos de Portilla and to decide if it would suit its interests to take charge of that enterprise under the conditions imposed by said gentlemen. The accounts were examined and before the expiration of the term to accept or refuse the proposition, we reached the conclusion that the business was in a very bad condition and that therefore it could not possibly thrive unless some special concessions were secured. To that effect, before said date, that is, on November 29, two days before the expiration of the term of the option, or one day before, we called Mr. Felices and Mr. Riancho and said to them: 'Gentlemen, if this company is going to work, it can not afford to pay the salaries that you want. So we will not sign the option unless you agree to set aside the salary agreement we have with you,

and to accept lower salaries.' Mr. Felices and Mr. Riancho stated that they agreed, but that they needed money immediately and asked for the advance, on the profits to be made by the business, of the difference between the salary they asked and that which could be paid by the enterprise. That was the effect of this agreement, which annulled the letter dated September 16, and wherein it was stated that the salary for services would be three hundred and fifty (350) dollars, and it was stated that he would be given three hundred and fifty dollars, but that part of said money, the amount of which was verbally fixed in seventy five dollars, would be given to him by way of advances on the profits to be obtained by the company. For a whole year the company worked and during that first year we steadily advanced seventy five dollars to Mr. Felices and one hundred dollars to Mr. Riancho on account of their share in the profits of the firm. Our plans did not work out and we had a very small profit, and the following year we started losing money. So as we were advancing money on account of profits to be made by the firm, we told Mr. Felices and Mr. Riancho that we could not advance any more money inasmuch as no profits were being made. Those are the real facts."

The lower court reached the conclusion that the Portilla Iron Works, Inc. paid to the plaintiff his $275 salary and that the monthly sum of $75 was paid by the defendant during 8 months as an advance on the profits, the plaintiff authorizing the discount of said amount and its delivery to the defendant on the date of the settlement; but it holds that the obligation of the defendant is a principal obligation and that the intention of the contracting parties was to guarantee to the plaintiff a monthly sum of $350 while his employment contract was in force, and without fixing therein the amount of the salary. "Both contracts," says the court, "take for granted the existence of profits, profits were guaranteed by the defendant as a part of the contract of services, and the

fact that finally there were no profits, does not release it from the obligation of paying them to the plaintiff to the extent of the sum guaranteed.''

We agree with the lower court in that both parties thought that the enterprise was going to yield profits. It is natural that they should hope for such a thing. That always happens when a business enterprise starts, and that explains the fact that the defendant guaranteed the advances in the belief that there were going to be profits to recover the sum advanced; but that does not mean that the plaintiff has a right of action to claim the advance promised after the elapse of the time during which said advance should have been returned. Perhaps the plaintiff had a right of action to compel the defendant to comply with its obligation when the latter discontinued the payment of the advances, but after a year elapsed without making any profits, the plaintiff should not be entitled to a sum the reimbursement of which can not be obtained, since there are no profits and the sum claimed is to cover overdue monthly payments. In accordance with the agreement, the payment is in the nature of an advance to be reimbursed out of the profits when the settlement is made. But if the time for the settlement is waited for, and it shows that no profits are made, there can be no obligation to pay if there is no hope to recover the amount paid. Even assuming the existence of profits, if no advances were made, and the settlement was waited for, the defendant would be bound to deliver to the plaintiff not an advance, which would no longer have a reason to exist, but its actual and real profit, to cover the overdue monthly instalments. The treasurer of the firm states that in view that the firm had a very small profit the first year, and started losing money the following year, Mr. Felices and Mr. Riancho were told that it was not possible to make any more advances, since there had been no profits that year nor the following.

It was at this moment that the plaintiff might have had any right of action, but not after the elapse of a year and after the admission by both parties that no profits were made. In accordance with the agreement the plaintiff was to receive $275 per month for his services, and as an additional compensation he was to receive 5 per cent of the annual net profit of the corporation. As admitted by plaintiff under his own signature, the defendant advanced the monthly sum of $75 to be discounted from the plaintiff's share and delivered to the defendant on the date of the settlement, out of that 5 per cent of the net annual profit. Now, when was that settlement to be made? In our opinion, annually, as it seems natural that a settlement be made each year to determine "the annual net profit of the corporation," and that the discount of the amounts advanced to the plaintiff also be made annually, to be returned to the defendant.

For the above reasons we are of opinion that the complaint should be dismissed.

■ In relation to the cross complaint, it has been shown by documentary evidence that the defendant paid to the plaintiff eight instalments of $75 each, which amount to $600 and that the corporation Portilla Iron Works, Inc. had some profits during its first year of business activities. The treasurer of the defendant admits in his testimony that the plaintiff was entitled to $300 out of those profits. That being so, we are of opinion that the plaintiff must reimburse the defendant the sum of $300 which were paid to him by way of advances on profits that were not made.

The judgment appealed from must be reversed and another entered dismissing the complaint and sustaining the cross complaint, ordering the plaintiff to pay to the defendant the sum of $300, without special imposition of costs.

Mr. Justice Aldrey took no part in the decision of this case.